IN THE UNITED STATES COURT OF APPEALS

FOR THE EIGHTH CIRCUIT

\* \* \* \* \*

NO. 06-2333-SD

\* \* \* \* \*

UNITED STATES OF AMERICA,

          Appellee,

v.

DARREN YOUNGMAN, a/k/a
TOTE YOUNGMAN,

          Appellant.

\* \* \* \* \* \* \* \*

APPEAL FROM THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA, CENTRAL DIVISION

\* \* \* \* \* \* \* \*

THE HONORABLE PATRICK CONMY
UNITED STATES DISTRICT COURT JUDGE

\* \* \* \* \* \* \* \*

**APPELLANT'S OPENING BRIEF**

_____

Al Arendt                              Attorney for Appellant
Attorney at Law
P.O. Box 1077
Pierre, South Dakota  57501

Mark Salter                          Attorney for Appellee
Assistant U. S. Attorney
P.O. Box 3303
Sioux Falls, South Dakota  57103-3303


NOTICE OF APPEAL WAS FILED ON 5/16/06

**SUMMARY AND REQUEST FOR ORAL ARGUMENT**

Defendant/Appellant herein, Darren Youngman, a/k/a Tote Youngman, hereinafter referred to as "Youngman", appeals his sentence for an 18-Count Indictment charging him with kidnapping, aggravated sexual abuse, assault with a dangerous weapon, assault resulting in serious bodily injury, and first degree burglary, in violation of 18 USC §1153, 1201(a)(2), 2241(a), 2246(2)(C), 113 (a)(3), 113(a)(6), and SDCL §22-32-1, which charged that on various dates, more fully set forth in the Indictment, in the District of South Dakota, Youngman did commit these acts upon Kathleen King, Crystal LaPointe, Sarah Reynolds, Kimberly Jones, Tricia O. Bordeaux, and Brenna LaPointe, with a range of punishment up to life in prison. At trial, the Government dismissed Counts 7, 10, 11, 12, 13 and 14 of the Indictment. The jury acquitted Youngman of Counts 1, 2 and 9. The trial court granted the Defendant's Motion for Judgment of Acquittal on Counts 6 and 18. The remaining counts of 3, 4, 5, 8, 15, 16 and 17, resulted in convictions. Youngman was sentenced by the Honorable Patrick Conmy on May 30, 2006 to the term of 280 months in prison. Youngman argues that the District Court erred as a matter of law on six separate issues, set forth more fully in this brief.

Youngman requests oral arguments herein, and deems 20 minutes to be sufficient.

i.

# TABLE OF CONTENTS

PAGE

SUMMARY AND REQUEST FOR ORAL ARGUMENT. . . . . . . . . . .  i

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . .  iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . .  1

STATEMENT OF ISSUES  . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . .  3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . .  4

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . .  12

ARGUMENT AND AUTHORITIES:

    THE DISTRICT COURT ERRED IN REFUSING YOUNGMAN'S
    MOTION FOR A WRIT OF HABEAS CORPUS AD
    TESTIFICANDUM FOR FRANCIS MEANS AND BONITA PACHECO  .  13

    THE DISTRICT COURT ERRED IN ADVISING THE JURY DURING
    THE BORDEAUX DISMISSALS THAT "YOU CAN'T HELP PEOPLE
    THAT DON'T WANT TO BE HELPED" . . . . . . . . . . . .  17

    THE DISTRICT COURT ERRED IN NOT SUBMITTING TO THE
    JURY THE DEFENDANT'S PROPOSED JURY INSTRUCTION #14
    RELATING TO TIME. . . . . . . . . . . . . . . . . . .  20

    THE DISTRICT COURT ERRED IN NOT GRANTING THE
    DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON
    COUNT 16. . . . . . . . . . . . . . . . . . . . . . .  22

    THE DISTRICT COURT ERRED IN NOT GRANTING YOUNGMAN'S
    MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 3 . . . . .  25

    THE DISTRICT COURT ERRED IN NOT GRANTING THE
    DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON
    COUNTS 4, 8 AND 15 FOR INSUFFICIENCY OF EVIDENCE. . .  27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .  29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . .  30

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . .  31

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . .  32

ii.

# TABLE OF AUTHORITIES

CASES                                                              PAGE

<u>Alidani v. Dooley</u>, 365 F.3d 635 (8th Cir. 2004). . . . 2, 18

<u>Curley v. U.S.A.</u>, 160 F.2d 229 (DC Cir. 1947) . . . . 25

<u>Quercia v. U.S.A.</u>, 289 U.S. 466, 53 S.Ct. 698,
        77 L.Ed. 1321 (1983) . . . . . . . . . . . . . 2, 18, 19

<u>U.S.A. v. Bolzer</u>, 367 F.3d 1032 (8th Cir. 2004). . . . 2, 3, 24,
                                                              27, 29

<u>U.S.A. v. Hernandez</u>, 299 F.3d 984 (8th Cir. 2002). . . 3, 24, 29

<u>U.S.A. v. Johnson</u>, 971 F.2d 562 (10th Cir. 1992) . . . 2, 3, 24, 27

<u>U.S.A. v. Lopez</u>, 443 F.3d 1026, 1030 (8th Cir. 2006) 2, 23, 27

<u>U.S.A. v. Lopez-Arce</u>, 267 F.3d 775 (8th Cir. 2001) . . 3, 24,
                                                              27, 29

<u>U.S.A. v. Mack</u>, 343 F.3d 929 (8th Cir. 2003) . . . . . 2, 21

<u>U.S.A. v. Rice</u>, 449 F.3d 887, 895 (8th Cir. 2006). . . 2, 21

<u>U.S.A. v. Sellers</u>, 520 F.2d 1281, 1285-1286
        (4th Cir. 1975) . . . . . . . . . . . . . . . 2, 14, 15

<u>U.S.A. v. Singer</u>, 710 F.2d 431 (1983) . . . . . . . . 2, 18

<u>U.S.A. v. Webster</u>, 750 F.2d 307, 329-330
        (5th Cir. 1984) . . . . . . . . . . . . . . . 2, 14

STATUTES

18 USC §113 (a)(3). . . . . . . . . . . . . . . . . . 3, 4, 5

18 USC §113(a)(6) . . . . . . . . . . . . . . . . . . 3

18 USC §922(g)(1) . . . . . . . . . . . . . . . . . . 1

18 USC §1153. . . . . . . . . . . . . . . . . . . . . 3, 4, 5

18 USC §1201(a)(2). . . . . . . . . . . . . . . . . . 3

18 USC §2241(a) . . . . . . . . . . . . . . . . . . . 3, 4, 5

18 USC §2246(2)(C). . . . . . . . . . . . . . . . . . 3, 4, 5

Appellate Case: 06-2333    Page: 4    Date Filed: 09/11/2006 Entry ID: 2089573

**TABLE OF AUTHORITIES, Continued**

STATUTES, Continued                                    PAGE

28 USC §1291. . . . . . . . . . . . . . . . . . . . . 1

SDCL §22-32-1 . . . . . . . . . . . . . . . . . . . . 3


OTHER AUTHORITIES

Rule 4(b) of the Federal Rules of Appellate Procedure .

Rule 29 of the Federal Rules of Criminal Procedure. . . 6

Article VI of the U.S. Constitution . . . . . . . . . 14, 15

iv.

## **JURISDICTIONAL STATEMENT**

This appeal is taken from a JUDGMENT IN A CRIMINAL CASE dated May 10, 2006, and filed on May 16, 2006, by the United States District Court for the District of South Dakota, Central Division, the Honorable Patrick Conmy, Judge, presiding (ADDENDUM I). The JUDGMENT IN A CRIMINAL CASE was entered pursuant to a finding of "guilty" by a federal jury on February 3, 2006 on seven counts of the Indictment. The Defendant was convicted on two counts of aggravated sexual abuse, and five counts of assault with a deadly weapon.

Jurisdiction of the District Court was invoked pursuant to 18 USC §922(g)(1). Appellate jurisdiction of this Court was invoked pursuant to 28 USC §1291.

Notice of Appeal was timely filed on May 16, 2006, pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.

Appellant, Darren Youngman, will be referred to as "Youngman", or "Appellant", or "Defendant". The United States of America, the Respondent and Appellee, will be referred to as the "United States (U.S.)", or as "Government". The United States District Court in which the original Indictment was filed will be referred to as the "trial court".

This criminal case was handled by the Honorable Patrick Conmy, Senior status from the District of North Dakota.

References to the Sentencing Transcript will be made by "ST", followed by the page number(s) to which reference is made, and the line number(s), (e.g., ST-15, L-5 through 14). References to the

1.

Addendum to this Brief will be made by the Addendum number, (e.g., ADDENDUM I).

## STATEMENT OF ISSUES

I.   THE DISTRICT COURT ERRED IN REFUSING YOUNGMAN'S MOTION FOR A WRIT OF HABEAS CORPUS AD TESTIFICANDUM FOR FRANCIS MEANS AND BONITA PACHECO.

U.S.A. v. Sellers, 520 F.2d 1281, 1285-1286 (4th Cir. 1975)

U.S.A. v. Webster, 750 F.2d 307, 329-330 (5th Cir. 1984)

II.  THE DISTRICT COURT ERRED IN ADVISING THE JURY DURING THE BORDEAUX DISMISSALS THAT "YOU CAN'T HELP PEOPLE THAT DON'T WANT TO BE HELPED".

Quercia v. U.S.A., 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1983)

U.S.A. v. Singer, 710 F.2d 431 (1983)

Alidani v. Dooley, 365 F.3d 635 (8th Cir. 2004)

III. THE DISTRICT COURT ERRED IN NOT SUBMITTING TO THE JURY THE DEFENDANT'S PROPOSED JURY INSTRUCTION #14 RELATING TO TIME.

U.S.A. v. Rice, 449 F.3d 887, 895 (8th Cir. 2006)

U.S.A. v. Mack, 343 F.3d 929 (8th Cir. 2003)

IV.  THE DISTRICT COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 16.

U.S.A. v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006)

U.S.A. v. Johnson, 971 F.2d 562 (10th Cir. 1992)

U.S.A. v. Bolzer, 367 F.3d 1032 (8th Cir. 2004)

V.   THE DISTRICT COURT ERRED IN NOT GRANTING YOUNGMAN'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 3.

U.S.A. v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006)

2.

<u>U.S.A. v. Johnson</u>, 971 F.2d 562 (10th Cir. 1992)

<u>U.S.A. v. Bolzer</u>

VI.  THE DISTRICT COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS 4, 8 AND 15 FOR INSUFFICIENCY OF EVIDENCE.

<u>U.S.A. v. Bolzer</u>, 367 F.3d 1032 (8th Cir. 2004)

<u>U.S.A. v. Hernandez</u>, 299 F.3d 984 (8th Cir. 2002)

<u>U.S.A. v. Lopez-Arce</u>, 267 F.3d 775 (8th Cir. 2001)

## **STATEMENT OF CASE**

The Defendant herein was charged by a Superceding Indictment on May 19, 2005 with five counts of Aggravated Sexual Abuse, six counts of Assault with a Dangerous Weapon, five counts of Assault Resulting in Serious Bodily Injury, and one count of Kidnapping and Burglary each, all in violation of 18 USC §1153, 1201(a)(2), 2241(a), 2246(2)(C), 113 (a)(3), 113(a)(6), and SDCL §22-32-1. The Defendant pled not guilty, and a jury trial was held in front of the Honorable Patrick Conmy in Pierre, South Dakota, commencing on January 30, 2006 and concluding on February 3, 2006. The Presentence Report was prepared and submitted on March 24, 2006. In the Presentence Report, the U.S. Probation Office recommended, in paragraph 128, a Guideline Range of 235 to 293 months. At the sentencing hearing on May 30, 2006, the Honorable Patrick Conmy adopted the Presentence Report and overruled the Government's objections.

The Appellant was sentenced, by Judge Conmy to a term of 280 months in prison.

3.

**STATEMENT OF FACTS**

As set forth above, the Defendant was indicted on an 18-count Indictment on May 19, 2005, and was convicted of seven counts of said Indictment on February 3, 2006.

Count 3 of the Indictment alleged that the Defendant knowingly caused Kathleen King to engage in a sexual act by using force against her person, and by threatening and placing her in fear that she would be subjected to death, serious bodily injury, and kidnapping, in violation of 18 USC §1153, 2241(a) and 2246(2). Count 4 involved the same victim and alleged that the Defendant, without just cause or excuse, did unlawfully assault her with a dangerous weapon, that is, a belt with intent to do bodily harm, in violation of 18 USC §1153 and 113(a)(3). Count 5 alleged that the Defendant committed the crime of assault with a dangerous weapon against the same victim by using shod feet, also in violation of 18 USC §1153 and 113(a)(3); Counts 3, 4 and 5 were alleged to have been committed between October 18, 2004 and October 20, 2004.

Count 8 of the Indictment alleged that the Defendant, between May 1, 2004 and September 30, 2004, without just cause or excuse, did unlawfully assault Sarah Reynolds with a dangerous weapon, that is, a belt, with intent to do bodily harm to Sarah Reynolds, in violation of 18 USC §1153 and 113(a)(3).

Count 15 of the Indictment charged that between January 1, 2001 and May 31, 2003, the Defendant, without just cause or excuse, did unlawfully assault Brenna LaPointe with a dangerous weapon,

4.

that is a belt, with intent to do bodily harm to her, in violation of 18 USC §1153, and 113(a)(3).

Count 16 of the Indictment charged that between January 1, 2001 and May 31, 2003 the Defendant did knowingly attempt to cause and caused Brenna LaPointe to engage in a sexual act by using force against her person and by threatening and placing her in fear that she would be subjected to death, serious bodily injury, and kidnapping, in violation of 18 USC §1153, 2241(a) and 2246(2).

Lastly, in Count 17, the Defendant was charged with assault with a dangerous weapon between January 1, 2003 and January 31, 2003 against Brenna LaPointe, by using a dangerous weapon, that is, a wooden flute, with intent to do bodily harm to her, in violation of 18 USC §1153 and 113(a)(3).

Of the original 18 counts, the Government dismissed six counts during trial, the jury acquitted the Defendant on three counts, and the Court granted the Defendant's Motion for Judgment of Acquittal on two counts; the convictions on the remaining seven counts form the basis for this appeal.

The Defendant herein was arrested on or about October 20, 2004, under a Tribal Complaint for the Rosebud Sioux Tribe.  In approximately December of 2004, a federal indictment was lodged in U.S. District Court for the District of South Dakota against the Defendant, and the U.S. Public Defender's Office was appointed to represent the Defendant herein.  After two continuances, your undersigned was appointed to represent Youngman in late October, 2005, after the Public Defender's Office's MOTION TO WITHDRAW was

5.

granted. Pursuant to this Court's ORDER FOR CONTINUANCE AND TO WITHDRAW PLEA AGREEMENT, dated October 3, 2005, your undersigned filed his MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM. The trial court issued its ORDER DENYING WRIT on January 27, 2006. Furthermore, pursuant to the aforementioned Pretrial Order of January 26, 2006, the Defendant submitted his Proposed Jury Instruction dealing with the Government's burden of proving the dates of the alleged criminal act. The Court rejected this proposed jury instruction on February 3, 2006.

During the Government's case in chief, Tricia O. Bordeaux, the alleged victim set forth in Counts 10, 11, 12, 13 and 14, refused to testify. After at least one sidebar conference, the Government moved to dismiss the aforementioned counts dealing with Bordeaux. Upon granting the motion, the trial court advised the jury that "you can't help people that don't want to be helped".

At the conclusion of the Government's case and the trial, the Defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure on Counts 3, 4, 5, 8, 15 and 16, all of which was denied by the trial court. Furthermore, the Defendant submitted written motions on the request for acquittal and a new trial on February 17, 2006. The Court denied the Defendant's motion for a new trial on seven counts of the jury's conviction, and let the same stand.

Sentencing took place in District Court in front of the Honorable Patrick Conmy on May 30, 2006. The Court sentenced the

6.

Defendant to 280 months in jail, and five years of supervised release; this appeal follows.

The Defendant, Youngman, at the time of the trial, was 38 years old, residing in the Rosebud, South Dakota area, located on the Rosebud Sioux Indian Reservation in South Dakota.

Kathleen King testified relative to Counts 1 through 6. King acknowledged that she had a boyfriend/girlfriend relationship with the Defendant five years previous to the trial starting (T-113, L-16). She further acknowledged that the couple got along "good" (T-113, L-23). King testified that Youngman stalked her, and she was scared of him (T-120, generally). She stayed at Crystal LaPointe's house because of her fear of him (T-124, generally). However, when she woke up in the morning of October 18, 2004, and found Youngman in the room she was sleeping, she had consensual sex with him (T-125, L-18). She then voluntarily left with him (T-125, L-20). They then went over to her apartment, and removed the boards on the windows (T-126, L-2 & 3). King further acknowledges that they had oral and vaginal sex "all day" (T-129, L-20 & 21). She acknowledges that she had consensual sex during this time (T-131, L-21). She acknowledges consenting to sex with a water bottle (T-132, L-15 & 17). Furthermore, King acknowledged engaging in anal, vaginal and oral sex during this time frame that she said was consensual (T-133, L-23). She indicated clearly that she knew that Youngman was going to engage in anal sex because he used saliva (T-134, L-3), but she never told him not to. It was only after the

7.

anal sex started, and it was painful, that she asked him to stop (T-134, L-8). In the early morning hours of October 20, 2004, almost two days after the incident happened, the Defendant took her to the IHS emergency room in Rosebud, South Dakota (T-189, L-18). At that time, she was examined by two physicians, Dr. Cade and Dr. Matthews (T-190, L-11). She failed to tell either physician, or any of the ER personnel, that she was forcibly raped (T-190, L-12 & 14). King contended, on direct examination, that she was terrified of Youngman during this two-day period, and he would not let her out of his sight (T-137, L-23). However, on cross examination, King admitted that Youngman left her alone for significant periods of time when he left her apartment to get car parts, go to court in Ainsworth, Nebraska, for 7 to 8 hours on October 19, 2004, and when he left her of at the IHS Hospital on the morning of October 20 (T-190, L-21). King testified on cross that when she had sex with the water bottle, that was consensual, in direct contradiction to the Indictment herein. Furthermore, King was interviewed by police officers on October 20 and 22, 2004, after she allegedly escaped from Youngman (T-187, L-19). At that time, she made no allegation that Youngman forced her to have sex (T-187, L-24). King further failed to disclose to either the Tribal Police or the FBI that Youngman had taken her to the IHS Hospital during this kidnapping/rape incident and left her there for an extended period of time to be examined for stomach pain (T-189, L-1 & 3). King further acknowledged that she had testified on direct examination that Youngman would not let her out of his sight any

8.

time in this 2-day period (T-189, L-21). King acknowledged that Youngman left her at the hospital, by herself, in this same time frame, (T-190, L-5). She further acknowledges not telling any of the hospital staff or doctors who she saw that morning about any of the allegations that she raised (T-190, L-12&14). She acknowledges being left alone by Mr. Youngman at the hospital "for hours" (T-190, L-21). King further acknowledges that she consensually went with Youngman on Monday, October 18, 2004, and had sex with him all day at her apartment (T-198, L-5). In derogation of her direct testimony, she acknowledges that Youngman left her alone on Tuesday, when he went to court (T-198, L-9). She acknowledges that she doesn't remember how long he was gone to court in Ainsworth, Nebraska, but she slept (T-198, L-22). She further acknowledges that in spite of him being gone for 7 or 8 hours, she did not do anything to get away (T-199, L-1). The victim testified that Youngman had kicked her with white tennis shoes (T-214, L-15). However, the FBI found black shoes at her residence (T-214, L-24).

In support of Count 8 of the Indictment, the Government called one Sarah Reynolds. Reynolds indicated that she had been romantically involved with Youngman in May of 2004 (T-335, L-7). Reynolds indicated that she broke up with Youngman on July 31, 2004 (T-336, L-8). She indicated that she went out that night and hooked up with one Ron Schott (T-336, L-15), and spent the night with him (T-336, L-17). She came back to her apartment about 6:00 in the morning, and went back to bed. Youngman was there. When she woke up, Youngman was striking her (T-337, L-8). Reynolds

9.

acknowledged that she got mad, and showed Youngman her hickeys from the night before, knowing that it would upset him (T-337, L-25). Youngman then took his belt off and started striking her about the legs and feet (T-338, L-2). After this, Reynolds says that Youngman verbally assaulted her for another half hour (T-339, L-22). Eventually, Youngman left (T-340, L-9). Reynolds acknowledges that she showed her hickeys to Youngman to provoke him (T-347, L-10), but received no medical care for the alleged injuries that she said she had (T-347, L-14 & 21). Reynolds further acknowledges never calling the police about this incident (T-348, L-3).

The Government's final victim was Brenna LaPointe. She indicated that she and Youngman occasionally stayed at a boarded up house next to her parents' residence (T-377).

LaPointe indicated that they were retiring for the evening on the day in question, and she accidentally hit him in the groin area. She said that he became upset and he punched and kicked her and spit on her (T-378). She indicated that she was crying, up against the wall, and he tried to comfort her. However, she indicated that they had sexual intercourse thereafter (T-379, L-3 & 4). She indicated that she did not want to do it (T-379, L-5). She further indicated that at no time did she tell him that she did not want to have sex. She indicated that she was not hugging him back, and that he should have recognized her feelings (T-380, L-16). Brenna further acknowledged that they both went to IHS for counseling as a result of the incident (T-384, L-8). LaPointe acknowledges that she never made a report about the alleged rape,

10.

being struck with a belt, or being hit with the flute (T-385, L-19).  She acknowledges never going to the hospital for the belt incident (T-386, L-13), or telling the police (T-386, L-15).  Furthermore, she acknowledges describing to an investigator that she never told Tote that she did not want to have sex (T-386, L-25).  She further told the investigator that she was simply not in the mood (T-387, L-4).  She re-emphasized that she never told Tote that she was not in the mood at this time or other times (T-387, L-14).  She further indicated that she did not resist his advances for sex (T-388, L-7).

At the conclusion of the Government's case, the Defendant moved for a judgment of acquittal on all counts of the Indictment.  The Court denied the motion at that time (T-467, L-11).

The Government brought five counts against the Defendant for raping and assaulting one Tricia O. Bordeaux.  During the examination of Ms. Bordeaux, she proved an extremely reluctant witness.  Eventually, she refused to cooperate with the Government (T-314).  The Government eventually moved to dismiss Counts 10 through 14.  However, at the time that Tricia O. Bordeaux was allowed to take a break from her testifying, the Court made a commentary to the jury.  The Court said as follows:

> "It's a difficult witness, and I'll give them some latitude.  But eventually, it may be that **you can't help people that don't want to be helped**."

Youngman testified, and denied assaulting Kathleen King, Sarah Reynolds, or Brenna LaPointe, and not forcing them to have sex with him (T-50 - 582).

11.

In settling jury instructions at the conclusion of the trial, Defendant proposed his instruction #14, which requires exactitude with respect to dates (T-618 - 619). The trial court denied the proposed instruction (T-619, L-6). On February 17, 2006, the Defendant submitted a lengthy written argument requesting a new trial, as well as a judgment of acquittal on counts 6 and 18. The Court granted a judgment of acquittal on counts 6 and 18, but denied the new trial.

## SUMMARY OF ARGUMENT

Youngman contends that the appearance and testimony of Francis Means and Bonita Pacheco were crucial to his defense in this case because Kathleen King identified each individual as observing her while she was allegedly under the control of Youngman between October 18 and 20, 2004. The Court's refusal to require these witnesses to appear simply because it would have been inconvenient is an abuse of discretion and substantially compromised the Defendant's constitutional right to subpoena witnesses in his defense.

The Court's commentary of "you can't help people that don't want to be helped" was reversible error because it clearly insinuated that Bordeaux was a victim, not only bolstering the Government's allegations against Youngman, but insinuating that the jury would not be able to help this victim. Kathleen King's testimony, taken as a whole, shows that Youngman's convictions for aggravated sexual abuse and two counts of assault with a dangerous weapon are not credible to the point where a reasonable jury,

12.

reviewing all the evidence, could have found for the Government. In Count 8, the contradictions of Sarah Reynolds' testimony, coupled with a complete lack of corroboration from Julie Hawkus, the medical record, and her own children, provided no basis for a reasonable trier of fact to convict the Defendant of assault with a dangerous weapon. Lastly, the aggravated sexual abuse conviction on County 16 involving Brennna LaPointe is not sustainable because the essential elements of the crime were absent; time and again, LaPointe acknowledged that she never told Youngman not to have sex with her. LaPointe contended that she was not in the mood. The defendant's conviction for assault with a dangerous weapon involving a belt on Brenna LaPointe in Count 15 is not sustainable for much the same reasons as the Reynolds conviction; there is no corroboration, either by a report to the police, by the medical records, and by the victim's contradictions in her testimony.

## ARGUMENTS AND AUTHORITIES

I.  **THE DISTRICT COURT ERRED IN REFUSING YOUNGMAN'S MOTION FOR A WRIT OF HABEAS CORPUS AD TESTIFICANDUM FOR FRANCIS MEANS AND BONITA PACHECO.**

Attached hereto as ADDENDUM II is a copy of the Defendant's MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM for Francis Means, and Bonita Pacheco. Both individuals were in federal custody, and were eyewitnesses to the relationship with the Defendant and Kathleen King. Kathleen King testified that Francis Means observed her, and her demeanor, with Youngman, during the period of her alleged restraint between October 18 and October 20, 2004 (T-219, L-10). Bonita Pacheco observed King over at King's

13.

home when Youngman was allegedly holding her against her will. Both witnesses could have provided credible evidence that contradicted King's version of events.

In the Court's ruling on the denial of the Motion for Writ of Habeas Corpus Ad Testificandum, said ORDER DENYING MOTION attached hereto as ADDENDUM III, the trial court states:

> "The Defendant has not informed the Court exactly where these three individuals are incarcerated and no Writs have been supplied for the Court's signature. Without knowing where they are being held, the Court cannot issue a writ. In addition, these individuals are located outside of South Dakota, and it would seem extremely unlikely that the U.S. Marshals could deliver them by February 1, 2006. Accordingly, the Motion for Writ of Habeas Corpus Ad Testificandum is DENIED."

The Court did not inquire or request any additional information from the Defendants in denying this.

The Court has wide discretion in this matter, as evidenced by U.S.A. v. Sellers, 520 F.2d 1281, 1285-1286 (4th Cir. 1975). An indigent party seeking a subpoena must show facts that, if true, demonstrate "the necessity of the requested witnesses' testimony". Federal Rule of Criminal Procedure 17, U.S.A. v. Webster, 750 F.2d 307, 329-330 (5th Cir. 1984). However, in the Defendant's MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM, filed on January 26, 2006, your undersigned clearly indicated the necessity to have these witnesses testify at trial. The trial court literally denied the defendant his constitutional right, in violation of Article VI of the U.S. Constitution. Trial court's rationale is unjustifiable. There is no showing that the Court even attempted to conduct a hearing to substantiate or provide a basis for its

14.

excuses for not issuing the subpoena. When faced with a consti-
tutional right, the Court is mandated to do more than summarily
deny a defendant his constitutional right; there has to be a
hearing, and a balancing of the rights of the defendant with the
need for a speedy trial. The need for a speedy trial is obviated
in this matter by the fact that the Court had granted at least two
continuances prior to this time, and the Defendant has been in
custody for 1.3 years.

Youngman's need for Francis Means and Bonita Pacheco as
witnesses was buttressed by the testimony of Kathleen King.

Article VI of the United States Constitution provides, in its
relevant sections, as follows:

> "In all criminal prosecutions, the accused shall
> enjoy the right . . . to have compulsory process for
> obtaining witnesses in his favor."

The Court, on January 27, 2006, rationalized a denial of this
basic constitutional right by saying "Without knowing where they're
being held, the Court cannot issue a Writ. In addition, if these
individuals are located outside South Dakota it would seem
extremely unlikely the U.S. Marshals could deliver them by February
1, 2006." Such a summary denial of a basic constitutional right is
prohibited; see <u>Sellers</u>, 520 F.2d at 1281.

Bonita Pacheco and Francis Means were essential witnesses to
Youngman's defense for Counts 3, 4 and 5 of the Indictment.
Specifically, on page 207, line 4, Kathleen King testified as
follows:

15.

"I asked Bonita if he (Youngman) was there, because I wanted to go home and get some clothes, and I wanted to make sure that he wasn't there when I got there."

It is anticipated that Bonita Pacheco could not only have rebutted Kathleen King's assertion that she was terrified of Youngman, but that he also held her against her will. Furthermore, Bonita Pacheco, if present, would have been able to testify that Kathleen King called her repeatedly to leave messages to have the Defendant contact King. This anticipated testimony was developed in cross examination of King in lines 11 through 15, page 207. Again, this testimony from Bonita Pacheco would have rebutted Kathleen King's and the prosecution's assertion that she was so terrified of Youngman that she would not even leave him, when left alone.

The prosecution repeatedly stressed and developed, in its direct examination of King, that she was never left alone (T-81, L-10). At all times King maintained, in her direct examination, that she could never get away from Youngman. However, Francis Means could have rebutted this if she had been brought back as a witness. Specifically, King testified, on cross examination questioning, that it was not accurate that she was never left alone by Youngman; she conceded that she had been taken to the hospital in the early morning hours of October 20 and left there for hours by Youngman. An integral defense witness to this was Francis Means. Francis Means would have testified that she caught a ride with Youngman that night while King was at the IHS emergency room in Rosebud, South Dakota. Means would have testified that Youngman was alone,

16.

and did not have King with her. She further would have testified that she was with Youngman when he went back to the hospital and picked up King from the emergency room. King corroborates this, in her cross examination on page 219, lines 9 through 14:

"Q: And were you guys alone, or was anybody else with you?

A: **Fran Means was with us.** (my emphasis)

Q: And what happened to her?

A: She went home.

Q: Where was that at?

A: She lives a block away."

Not only could Fran Means have vouched that King was not held against her will by Youngman, but she was left alone at the hospital and that Youngman was by himself. Furthermore, she could have contradicted King's assertions that she had been raped and brutalized by Youngman. Although she had every opportunity to tell numerous people, including Francis Means, that Youngman allegedly raped her and assaulted her, she never did so. Again, the testimony of Francis Means was an integral part of the Defendant's rebuttal to the Government's allegations herein and Judge Conmy's denial of the Writ of Habeas Corpus Ad Testificandum deprived him of this constitutional right.

## II. THE DISTRICT COURT ERRED IN ADVISING THE JURY DURING THE BORDEAUX DISMISSALS THAT "YOU CAN'T HELP PEOPLE THAT DON'T WANT TO BE HELPED".

As part of its case in chief, the Government called Tricia O. Bordeaux, on page 311 of the trial transcript. Immediately, the witness indicated that she did not want to be there, and did not

17.

want to testify (T-312, L-8). A review of the transcript of Bordeaux's testimony, on pages 311 through 315, shows that the witness was extremely reluctant, did not want to testify, did not want to appear, and indicated so on the record. At the conclusion of the Government's attempts to extract testimony from this recalcitrant witness, the Court made the following commentary on page 315, line 3: "You can't help people that don't want to be helped."

This commentary by the Court to the jury may serve as the basis for a reversal. Specifically, the U.S. Supreme Court, in Quercia v. U.S.A., 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1983), found that where a trial court has overstepped its bounds and the judge has put his own experience with all the weight attached to it on the scale against the accused, a reversal may be warranted. In Quercia, the Supreme Court held that the trial court's egregious comments resulted in the highly prejudicial error that warranted reversal; see 289 U.S. 466, 472, 53 S.Ct. 698, 77 L.Ed. 1321. Further, the Eighth Circuit held in U.S.A. v. Singer, 710 F.2d 431 (1983), that where a District Court had so far injected itself into the trial as to give the jury the impression that it favored the prosecution and thereby deprived the defendants of a fair trial, a reversal is warranted. Eventually, the Eighth Circuit held, in the habeas case of Alidani v. Dooley, 365 F.3d 635 (8th Cir. 2004), that a state court judge had not so egregiously asserted himself so as to rise to the level of reversible error. Judge Arnold, in a sharply worded dissent in Alidani, rejected the

18.

contention that the trial judge did not mean to affect the jury's deliberation. Arnold concluded that the trial court's subjective intent was not controlling, or even relevant in this context. Where the trial judge exceeded his role as a governor of the trial and took on the jury's assigned task, reversible error had occurred. Arnold further held that Quercia "stands not merely for the minimal claim that a trial judge is prohibited from making only 'extremely egregious and prejudicial' comments as to the credibility of a witness, but that it is almost always reversible error for a trial judge by injecting his own opinion into the analysis to intrude upon and thus take away the Defendant's right to have the jury weigh the credibility of a witness."

The Defendant could not object to this statement because it had no knowledge that the Court was going to make such a commentary. Furthermore, any attempt to ask the Court to admonish the jury to disregard the statement would have been fruitless for two reasons: First, the Court would not have retracted the statement and even if it had, the jury had already heard the commentary.

The devastating part of the commentary is that it insinuates that Tricia O. Bordeaux, the alleged victim herein, upon which five counts of the Indictment are based, needed help; the obvious imputation of that statement is that she needed help because she had been abused and/or raped by Youngman. Such a commentary by the trial judge not only bolstered the Government's accusation against Youngman, but further left the jury with the distinct impression

19.

that the Court agrees with Counts 10, 11, 12, 13 and 14; although these counts were eventually dismissed, on page 363, line 25. Contrast the Court's commentary on page 315 with its statement at the time of dismissal on page 364:

> "Let me just say to you, we explored options of what to do with a young woman who was just distraught for whatever reason, and determined that this is the best option."

The trial judge's commentary upon the dismissal of these counts by the Government in no way insinuates or led the jury to believe that the trial judge has an opinion about the validity of those counts of the Indictment that were just dismissed. It is neutral. However, the commentary made by the Court on page 311 clearly insinuates that this is a victim who needs help, and that if she refuses help, there is nothing the jury or the judge can do for her. For the foregoing reasons, the Court should not have made the commentary, and it was plain error because it left the jury with the insinuation that the Court agreed with the Bordeaux counts.

**III. THE DISTRICT COURT ERRED IN NOT SUBMITTING TO THE JURY THE DEFENDANT'S PROPOSED JURY INSTRUCTION #14 RELATING TO TIME.**

Pursuant to the Court's Amended Pretrial Order, the Defendant submitted, on January 20, 2006, a set of proposed jury instructions. Instruction #14, attached as ADDENDUM IV, read as follows:

> "The Indictment charges that the offense was committed 'on or about between' certain dates. The proof needs to establish with certainty the exact date of the alleged offense. It is insufficient that the evidence in

20.

the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged. It is the Government's burden to provide evidence which establishes the exact date they assert the offense occurred on."

The standard Eighth Circuit jury instruction was substituted by Judge Conmy. Your undersigned requested the Court to include his proposed Jury Instruction #14. However, on page 619 of the trial transcript, the trial court stated as follows:

"Your requested instruction was diametrically opposite to what I understand the state of the law to be in the 8th Circuit. And I would kind of comment about South Dakota practice. We've tried a few sexual abuse of children crimes, where the one crime occurred in the period set out in the indictment is during the calendar year, with the Defendant trying to find an alibi defense, when the time frame, is that broad, but that's apparently the practice following South Dakota."

In <u>U.S.A. v. Rice</u>, 449 F.3d 887, 895 (8th Cir. 2006), this Court held that the appropriate review on jury instructions is for plain error; if the instructions, "taken as a whole", adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the Government, then there is no error; also see <u>U.S.A. v. Mack</u>, 343 F.3d 929 (8th Cir. 2003).

The refusal of the Court to require the Government to prove when these crimes occurred makes it all but impossible for the Defendant to defend against. Specifically, the counts with respect to Brenna LaPointe cover a time frame of exactly 29 months. However, the Defendant had pled guilty in tribal court to the incident involving the flute and therefore, the Government knew exactly when that occurred. However, the trial court's allowance of the standard jury instruction allowed the Government to

21.

unnecessarily minimize their burden. The date for the medical case on the flute incident (which count is not a grounds for any of the appeals herein), was January 10, 2003. However, the Government was allowed to utilize a 29-month time frame even though they knew the date in question. Furthermore, Brenna LaPointe's testimony was that Count 16, aggravated sexual abuse, occurred one year before the flute incident. The records show that she treated at the hospital for the flute incident on January 10 of 2003. One year before that treatment would have been January 10, 2002. The Court should have submitted the Defendant's proposed jury instruction #14 and required the Government to be more specific with respect to the dates alleged in the indictment, particularly with respect to the Brenna LaPointe charges.

### IV. THE DISTRICT COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 16.

The uncontroverted testimony of the victim on Count 16, Brenna LaPointe, is as follows:

"Q: Why did you do it?

A: He was nice then, and it made him not want to hurt me any more." (T-379, L-6-8)

Furthermore, on cross examination, Brenna LaPointe testified as follows:

"Q: Now, last summer, do you recall being interviewed by one John Duffy?

A: Yes.

Q: And do you recall telling him that you never told Tote at that time, no, you didn't want to have sex?

A: Yes.

22.

```
Q:  As a matter of fact what you characterize it as, you were
    not in the mood because of the fight you had just had?

A:  Yes.

Q:  Then you said further that Tote never forcibly raped you
    and that this is the only time that you had sex with him
    that you were not in the mood?

A:  Not at that time.  That's not true.

Q:  You never told him that?  Are you denying you said that
    to Mr. Duffy?

A:  Yes, because there was more than one time that I didn't
    want to have sex with him.

Q:  But you never told him no, did you?

A:  **No, I didn't.** (My emphasis)

.  .  .  .  .  .  .  .

Q:  Well, you never told him, "No, I don't want to have sex
    with you", did you?

A:  No, I did not.
```

The Defendant moved, at the conclusion of the Government's case and at the conclusion of the trial, for a Judgment of Acquittal on this and other counts. The Court denied the same. The Court further denied the February 17, 2006 written motion made by the Defendant for an acquittal on this count.

The Defendant contends that the jury could not have convicted him, under a reasonable trier of fact standard, of the count of aggravated sexual abuse, Count 16. The Eighth Circuit has repeatedly held that they will affirm a conviction if the evidence, viewed in the light most favorable to the Government, could have convinced a reasonable jury that the Defendant was guilty beyond any reasonable doubt; see U.S.A. v. Lopez, 443 F.3d 1026, 1030 (8th

Cir. 2006). Also, in <u>U.S.A. v. Johnson</u>, 971 F.2d 562 (10th Cir. 1992), the Tenth Circuit reversed convictions of the defendants on the basis of statutory definition contained under 18 USC §1957(f)(1). Furthermore, the Eighth Circuit has found that it will reverse a conviction for lack of sufficient evidence only if no reasonable juror could have concluded beyond a reasonable doubt that the Government has met their burden of proof as to each element of the offense; see <u>U.S.A. v. Bolzer</u>, 367 F.3d 1032 (8th Cir. 2004); and <u>U.S.A. v. Hernandez</u>, 299 F.3d 984 (8th Cir. 2002). The Court reviews the evidence in the light most favorable to the verdict; <u>U.S.A. v. Lopez-Arce</u>, 267 F.3d 775 (8th Cir. 2001). Brenna LaPointe conceded that she did not tell the Defendant, at any time, to not have sex with her; she did not tell him "no"; and she did not verbalize any attempt to dissuade him from having sex with her. To the contrary, her testimony shows that she voluntarily engaged in it for her own motives, that being so that he would be nice to her. Furthermore, LaPointe acknowledges that in spite of allegedly being raped in 2002, she stayed with the Defendant until January of 2003, when he struck her with a flute. Therefore, the facts show that Brenna LaPointe engaged in sex with the Defendant at the time that she complained, never told him that she did not want to have sex, voluntarily engaged in sex, and then remained with this rapist for at least another 12 months. All of the foregoing militates against a guilty verdict, and in favor of a directed verdict of acquittal. The victim acknowledges that at no time did she ever report the rape to law enforcement, to medical officials, or the

24.

like. No rape kit was ever done. Her sole assertion is that Youngman should have understood from her body language that she was not interested in having sex. She told the investigator that she was "not in the mood". John Duffy, the Defendant's investigator, testified that LaPointe told him that she "did not say no to Mr. Youngman" (T-509, L-6 & 7). LaPointe testified that the term "not in the mood" is "wouldn't be the phrase I would put it in" (T-387, L-25). However, that is exactly the phrase that she used with Investigator Duffy (T-509, L-11). LaPointe was further contradicted by the investigator. LaPointe, on cross, testified that it was not true that that was the only time that she had sex with Youngman when she was not in the mood (T-387, L-6 & 7). However, Duffy testified that she never had sex with Youngman on a prior occasion by force or that she wasn't in the mood (T-510, L-6 & 7).

In <u>Curley v. U.S.A.</u>, 160 F.2d 229 (DC Cir. 1947), the Court held that:

> "The true rule, therefore, is that a trial judge, in passing upon a motion for a directed verdict of acquittal must determine whether, upon evidence, giving full pay to the right of the jury, to determine credibility, where the reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such doubt in a reasonable mind, he must grant the motion; or, to state it another way, there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter."

## V. THE DISTRICT COURT ERRED IN NOT GRANTING YOUNGMAN'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 3.

Count 3 of the Indictment alleged that Youngman, between

25.

October 18, 2004 and October 20, 2004, forced King to engage in a sexual act by placing her into fear.

However, the only time in any of King's testimony that she acknowledged that sex was not consensual was when they had anal sex. However, a careful reading of the testimony of the victim shows that she did not contend that she had told him not to engage in anal sex, but only that it hurt after he engaged in it and she asked him to stop. Specifically, she acknowledged engaging in anal, vaginal and oral sex (T-133, L-23). She further acknowledged that he put saliva on her anus before he put his penis in (T-134, L-3). She then testified that "I screamed, Ow, that hurts" and asked him to stop (T-134, L-7 & 8). In other words, she knew that he was going to cause Kathleen King to engage in a sexual act without using force, threats against her, or placing her in fear. However, her testimony clearly shows that he did not force her to engage in anal sex. Only after they started anal sex, and it hurt, did she tell him to stop. Specifically, she said "Yes. I said Don't, that hurts, ow; quit" (T-134, L-16). Other than that, Kathleen King acknowledges, on both direct and cross (T-139, L-21 & T-186, L-2) that she had consensual sex. These concessions and admissions by King are devastating in and of themselves. King also spoke to the police on October 20 and October 22. She acknowledges in her statements that she never once told law enforcement in those statements that she was forced to have anal sex against her will (T-187, L-24). She then acknowledges changing her story when she spoke to FBI Agent Dave Mackey in November, 2004 (T-188, L-9).

26.

However, she further acknowledges that this alleged rape, and the injury it caused her, occurred before she went to the IHS Hospital. Although she was seen by two physicians, Dr. Cade and Dr. Matthews, she never told them about the alleged anal rape (T-190, L-12), nor did she have a rape kit done on her while she was being examined at the IHS facility on October 20, 2004. She failed to tell the personnel at the hospital that she was being held against her will. Rather, she spent several hours at the IHS Hospital in Rosebud, South Dakota, complaining about stomach pains and problems that she was having. The victim failed to disclose any of the alleged crimes that the Defendant was convicted of, particularly the assault with the shod feet, the assault with a belt, or the anal rape.

A reasonable trier of fact could not have found, beyond a reasonable doubt, when considering all of this evidence in a light most favorable to the victim, Kathleen King, that the Government had proved its case. See U.S.A. v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006); U.S.A. v. Johnson, 971 F.2d 562 (10th Cir. 1992); U.S.A. v. Bolzer, 367 F.3d 1032 (8th Cir. 2004); and U.S.A. v. Lopez-Arce, 267 F.3d 775 (8th Cir. 2001). For these reasons, the Court should have granted, under the standard for judgments of acquittal, the Defendant's Motion to Dismiss.

> **VI. THE DISTRICT COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS 4, 8 AND 15 FOR INSUFFICIENCY OF EVIDENCE.**

It is acknowledged by Youngman that there is some dispute, based upon King's testimony, if she was assaulted with the belt

27.

before she went to the emergency room at the Indian Health Service Hospital in Rosebud, South Dakota on October 20, 2004, or after that hospital visit. However, a review of her direct examination testimony shows that this alleged assault occurred while the victim was being held against her will. The visit to the hospital occurred after she was not being held against her will. At no time did King disclose to the hospital personnel, nor did they observe any injuries or bruises consistent with being struck with a belt. King did not complain about any injuries or bruises at the ER visit. King did not ask for assistance. King did not disclose this until she talked to the police two days later on October 22, 2004.

For much the same reason, the District Court should have granted Youngman's Motion for Judgment of Acquittal relative to Count 8, the assault involving Sarah Reynolds. Reynolds never reported this incident to the police, never made a police report, and did nothing to prosecute the matter until she was sought out by law enforcement after Youngman was indicted in December of '04. Reynolds never received any treatment for this alleged injury, never saw a doctor, and suffered no serious bodily injury, as the District Court found.

Lastly, similar arguments can be made relative to the Brenna LaPointe assault with a dangerous weapon. LaPointe acknowledges that although she claims Youngman hit her with a belt, causing serious bodily injury, the Court found that no serious bodily injury was proven. Furthermore, LaPointe testified on direct and

28.

cross examination that she at no time reported this matter to the police (T-385, L-19).

The only evidence supporting these three counts is the uncorroborated testimony of the victims, which, as evidenced above, has significant impeachment problems. These convictions should be reversed for lack of sufficient evidence. U.S.A. v. Bolzer, 367 F.3d 1032 (8th Cir. 2004); U.S.A. v. Hernandez, 299 F.3d 984 (8th Cir. 2002); and U.S.A. v. Lopez-Arce, 267 F.3d 775 (8th Cir. 2001).

## CONCLUSION

Appellant would ask the Eighth Circuit Court of Appeals to set aside his six convictions set forth herein. Appellant is not appealing his conviction on Count 17 because he has already pled guilty to that charge in tribal court.

DATED this 8th day of September, 2006.

                                   ARENDT LAW OFFICE


                                   _____
                                   Al Arendt, Attorney for Appellant
                                   P.O. Box 1077
                                   Pierre, South Dakota 57501
                                   (605) 224-7700

29.

## CERTIFICATE OF SERVICE

I, Al Arendt, do hereby certify that I served a true and correct copy of the foregoing APPELLANT'S OPENING BRIEF upon the persons next designated by mailing same by first class mail, postage prepaid, addressed as follows:

Mark Salter
Assistant U. S. Attorney
P.O. Box 3303
Sioux Falls, SD  57103-3303

Darren "Tote" Youngman, 12753-073
FCI Beaumont Medium
Federal Correctional Institution
P.O. Box 26040
Beaumont, TX 77720

Dated this 8th day of September, 2006.

ARENDT LAW OFFICE

_____
Al Arendt, Attorney for Appellant
P.O. Box 1077
Pierre, SD  57501
(605) 224-7700

30.

## CERTIFICATE OF COMPLIANCE

I, Al Arendt, attorney for the Appellant herein, do hereby certify that the full text of the BRIEF OF THE APPELLANT, DARREN YOUNGMAN, does comply with the type-volume limitation requirements, according to the Federal Rules of Appellate Procedure. Said Brief of Appellant has been produced in *WordPerfect Office 12*, and has been copied on a CD-ROM, which CD-ROM has been appropriately labeled and scanned for viruses using *Norton AntiVirus*, and has been found to be virus-free.

DATED this 8th day of September, 2006.

ARENDT LAW OFFICE

_____
Al Arendt, Attorney for Appellant
P.O. Box 1077
Pierre, SD  57501
(605) 224-7700

31.

Appellate Case: 06-2333    Page: 36    Date Filed: 09/11/2006 Entry ID: 2089573

## ADDENDUM

U.S. District Judge Conmy's JUDGMENT IN A CRIMINAL CASE,
    dated May 10, 2006 . . . . . . . . . . . . . . . . . . I

MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM . . . . . . II

ORDER DENYING MOTION  . . . . . . . . . . . . . . . . . . . III

Defendant's Proposed JURY INSTRUCTION #14 . . . . . . . . . . IV

32.